Opinion issued March 8, 2007















 


 



In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00158-CV

____________


CHCA MAINLAND L.P. D/B/A MAINLAND MEDICAL CENTER,
Appellant


V.


JAMES M. BURKHALTER, INDIVIDUALLY AND AS INDEPENDENT
EXECUTOR OF THE ESTATE OF GLENDA BURKHALTER,
DECEASED, AND JAMIE N. BURKHALTER AND JOE E. FERGUSON, II,
Appellees






On Appeal from the 122nd District Court

Galveston County, Texas

Trial Court Cause No. 05CV0824






O P I N I O N

 In this interlocutory appeal, (1) appellant, CHCA Mainland L.P. doing business
as Mainland Medical Center ("Mainland"), challenges the trial court's January 25,
2006 order denying its motion to dismiss the health care liability claim of appellees,
James M. Burkhalter, individually and as independent executor of the estate of
Glenda Burkhalter, deceased, and Jamie N. Burkhalter and Joe E. Ferguson, II ("the
Burkhalters"). (2) 

 We reverse the trial court's January 25, 2006 order denying Mainland's motion
to dismiss and render judgment dismissing with prejudice the Burkhalters' claims
against Mainland.

Procedural Background


 In their original petition, filed on July 8, 2005, the Burkhalters sued Mainland
and Dr. Robin Lynn Armstrong, (3) alleging that their negligence proximately caused
the death of Glenda Burkhalter. On July 22, 2005, the Burkhalters amended their
original petition, further alleging that, on or about August 28, 2003, Glenda
Burkhalter sought medical care and treatment at Mainland's emergency room because
she was suffering from progressive epigastric abdominal pain radiating to her back,
nausea, vomiting, diarrhea, some chest pain, and palpitations. They also alleged that
Mainland and Dr. Armstrong were negligent and proximately caused Glenda
Burkhalter's injuries in (1) "deviating from the standard of care for treatment of
gallstone pancreatitis secondary to acute common bile duct obstruction by stone(s)";
(2) "failing to properly and timely diagnosis [sic] [Glenda Burkhalter's] gallstone
pancreatitis secondary to acute common bile duct obstruction by stone(s)"; (3)
"failing to properly treat [Glenda Burkhalter's] condition"; (4) "failing to refer
[Glenda Burkhalter] with expressed immediacy to a specialist or physician qualified
to confirm diagnosis and treat [her], or to consult with such a specialist or physician
concerning [her] condition"; (5) "failing to insure that [Glenda Burkhalter] was
properly monitored"; and (6) "failing to admit [Glenda Burkhalter] to an intensive
care unit upon discharge from the emergency room." 

 On August 1, 2005, the Burkhalters served Mainland with the expert report (4) of
John H. Fullerton, M.D. Mainland, on August 22, 2005, filed its "Objection to
Plaintiffs' Chapter 74.351 Expert Report." Mainland objected to Dr. Fullerton's
report as inadequate and requested a "dismissal" of the Burkhalters' claim. (5) The
Burkhalters filed a response, and, on November 18, 2005, the trial court entered a
written order denying Mainland's "objections." Mainland, on December 6, 2005,
filed a "Motion to Dismiss" the Burkhalters' claim based on Dr. Fullerton's
"inadequate" report. The Burkhalters filed a response, and the trial court, on January
25, 2006, signed its order denying Mainland's motion to dismiss. Subsequently, on
February 14, 2006, Mainland filed its notice of appeal of the January 25, 2006 order.

Jurisdiction

 At the outset, we address the Burkhalters' argument that Mainland's appeal is
untimely because "[a] defendant seeking review of a trial court's refusal to dismiss
based on an inadequate expert report must file a notice of appeal within 20 days of
the order denying relief." See Tex. R. App. P. 26.1(b), 28.1. They assert that
"[a]lthough captioned as an 'Objection' to the expert report, Mainland's first motion
specifically cited section 74.351(b) and clearly sought the relief enumerated in that
subsection: dismissal and recovery of costs and attorney's fees." See Tex. Civ. Prac.
& Rem. Code Ann. § 74.351(b) (Vernon Supp. 2006). Therefore, because "[t]he
motion was denied November 18, 2005, . . . any interlocutory appeal must have been
commenced no later than December 8, 2005." In response, Mainland argues that
because the trial court, in its first order, only denied its "objections" to Dr. Fullerton's
report and did not rule on its request to dismiss the Burkhalters' claims under section
74.351(b), the November 18, 2005 order was not appealable.

 Section 74.351(a) provides that within 120 days of filing an original petition
in a health care liability claim, a plaintiff must serve on each defendant an expert
report, along with the expert's curriculum vitae. Id. § 74.351(a) (Vernon Supp.
2006). An expert report is defined as "a written report by an expert that provides a
fair summary of the expert's opinions as of the date of the report regarding applicable
standards of care, the manner in which the care rendered by the physician or health
care provider failed to meet the standards, and the causal relationship between that
failure and the injury, harm, or damages claimed." Id. § 74.351(r)(6) (Vernon Supp.
2006). 

 Section 74.351(l) provides the proper basis for lodging objections to the
adequacy of an expert report. See id. § 74.351(l) (Vernon Supp. 2006) ("A court shall
grant a motion challenging the adequacy of an expert report only if it appears to the
court, after hearing, that the report does not represent an objective good faith effort
to comply with the definition of an expert report in Subsection (r)(6)."); Methodist
Healthcare Sys. of San Antonio, Ltd. v. Martinez-Partido, No. 04-05-00868-CV, 2006
WL 1627844, at *2 (Tex. App.--San Antonio June 14, 2006, pet. denied) (mem. op.). 
Although an interlocutory appeal may be taken from an order that "grants relief
sought by a motion under Section 74.351(l)," a defendant has no right of interlocutory
appeal if the trial court denies the defendant's challenge to the adequacy of an expert
report under section 74.351(l). Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(10)
(Vernon Supp. 2006); Lewis v. Funderburk, 191 S.W.3d 756, 760 (Tex. App.--Waco
2006, pet. filed). 

 An expert report may be deemed untimely filed under section 74.351(a) if the
report is served before the 120-day deadline, but deficient. Acad. of Oriental Med.,
L.L.C. v. Audra, 173 S.W.3d 184, 187 n.5 (Tex. App.--Austin 2005, no pet.);
Martinez-Partido, 2006 WL 1627844, at *1. If an adequate expert report "has not
been served" within the 120-day period, the court, on the defendant's motion, shall,
subject to section 74.351(c), (6) enter an order that "awards to the affected physician or
health care provider reasonable attorney's fees and costs of court" and "dismisses the
claim with respect to the physician or health care provider, with prejudice to the
refiling of the claim." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b). A person
may appeal from an interlocutory order that "denies all or part of the relief sought by
a motion under Section 74.351(b), except that an appeal may not be taken from an
order granting an extension under Section 74.351." Id. § 51.014(a)(9) (Vernon Supp.
2006); see id. § 74.351(c) (Vernon Supp. 2006).

 Here, Mainland, in its August 22, 2005 "Objection to Plaintiffs' Chapter
74.351 Expert Report," in addition to objecting to the adequacy of the Burkhalters'
report, also requested dismissal of the Burkhalters' claims with prejudice. However,
the trial court, in its November 18, 2005 order, did not rule on Mainland's initial
request to dismiss the case pursuant to section 74.351(b). Rather, the trial court only
overruled Mainland's objections to Dr. Fullerton's report made pursuant to section
74.351(l). We note that in order to complain of an error on appeal, the record must
show that the trial court either expressly or impliedly ruled on the request, objection,
or motion. See Tex. R. App. P. 33.1(a)(2)(A). Only after Mainland filed its
subsequent "Motion to Dismiss" did the trial court enter its January 25, 2006 order
denying Mainland's request for a dismissal pursuant to section 74.351(b). 
Accordingly, we have jurisdiction over the instant appeal of the trial court's January
25, 2006 order denying Mainland's motion to dismiss.

Expert Report

 In its sole issue, Mainland argues that the trial court, in its January 25, 2006
order, erred in denying Mainland's motion to dismiss because Dr. Fullerton's expert
report "did not contain a fair summary of the expert's opinions against Mainland on
any of the three elements required by section 74.351(r)(6)." Mainland asserts that the
report "failed to include any standard(s) of care for the hospital or the hospital staff,
and it was conclusory as to the hospital and hospital staff on the elements of breach
of the standard of care and causation," and therefore "was not an objective good faith
effort under section 74.351(l)."

 We review a trial court's decision on a motion to dismiss a case under section
74.351(b) for an abuse of discretion. See Am. Transitional Care Ctrs. of Tex., Inc. v.
Palacios, 46 S.W.3d 873, 875 (Tex. 2001) (holding trial court's decision to dismiss
under former article 4590i, section 13.01(e), is reviewed for abuse of discretion);
Lookshin v. Feldman, 127 S.W.3d 100, 103 (Tex. App.--Houston [1st Dist.] 2003,
pet. denied) (same). A trial court abuses its discretion if it acts in an arbitrary or
unreasonable manner without reference to guiding rules or principles. Downer v.
Aquamarine Operators., Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). When reviewing
matters committed to the trial court's discretion, we may not substitute our own
judgment for that of the trial court. Walker v. Packer, 827 S.W.2d 833, 839 (Tex.
1992).

 Here, the issue is whether Dr. Fullerton's report represents an objective good
faith effort to comply with the statutory definition of an expert report. See Tex. Civ.
Prac. & Rem. Code Ann. § 74.351(l); Palacios, 46 S.W.3d at 878. The definition
requires a fair summary of the expert's opinions as of the date of the report regarding
applicable standards of care, the manner in which the care rendered by the physician
or health care provider failed to meet the standards, and the causal relationship
between that failure and the injury, harm, or damages claimed. Tex. Civ. Prac. &
Rem. Code Ann. § 74.351(r)(6). If a plaintiff timely files an expert report and the
defendant moves to dismiss because of the report's inadequacy, a trial court must
grant the motion "only if it appears to the court, after hearing, that the report does not
represent an objective good faith effort to comply with the definition of an expert
report in Subsection (r)(6)." Id. § 74.351(l); Bowie Mem'l Hosp. v. Wright, 79
S.W.3d 48, 51-52 (Tex. 2002) (applying former article 4590i, section 13.01(l)).

 Because the statute focuses on what the report discusses, the only information
relevant to the inquiry is within the four corners of the document. Palacios, 46
S.W.3d at 878. A report need not marshal all the plaintiffs' proof, but it must include
the expert's opinion on each of the elements identified in the statute. Id. In setting
out the expert's opinions on each of those elements, the report must provide enough
information to fulfill two purposes if it is to constitute a good faith effort. Id. at 879. 
First, the report must inform the defendant of the specific conduct the plaintiffs have
called into question. Id. Second, and equally important, the report must provide a
basis for the trial court to conclude that the claims have merit. Id. 

 A report that merely states the expert's conclusions about the standard of care,
breach, and causation does not fulfill these two purposes. Id. Rather, the expert must
explain the basis of his statements to link his conclusions to the facts. Wright, 79
S.W.3d at 52. Nor can a report meet these purposes and thus constitute a good faith
effort if it omits any of the statutory requirements. Palacios, 46 S.W.3d at 879. 
However, to avoid dismissal, a plaintiff need not present evidence in the report as if
it were actually litigating the merits. Id. The report can be informal in that the
information in the report does not have to meet the same requirements as the evidence
offered in a summary judgment proceeding or at trial. Id.

 Identifying the standard of care is critical: whether a defendant breached his
or her duty to a patient cannot be determined absent specific information about what
the defendant should have done differently. Id. at 880. While a "fair summary" is
something less than a full statement of the applicable standard of care and how it was
breached, even a fair summary must set out what care was expected, but not given. 
Id. When a plaintiff sues more than one defendant, the expert report must set forth
the standard of care for each defendant and explain the causal relationship between
each defendant's individual acts and the injury. See Doades v. Syed, 94 S.W.3d 664,
671-72 (Tex. App.--San Antonio 2002, no pet.); Rittmer v. Garza, 65 S.W.3d 718,
722-23 (Tex. App.--Houston [14th Dist.] 2001, no pet.).

 Mainland argues that Dr. Fullerton's report is inadequate because he "did not
include in his report any discussion of any standard of care applicable to a hospital,
its nurses, or other hospital employees" and, "[a]s to Mainland, Dr. Fullerton's
opinions on breach and causation were conclusory at best." Mainland asserts that
"[i]n his report, Dr. Fullerton never states the standards of care applicable to a
hospital or its nurses or other employees." It further asserts that "[a]lthough Dr.
Fullerton states in one sentence--the only mention of the hospital or its staff in the
entire expert report--that the hospital staff breached the standard of care during
Glenda [Burkhalter's] hospitalization at Mainland, he does not identify how
Mainland's staff breached the standard of care." Additionally, "[i]n discussing
proximate causation, Dr. Fullerton does not state how any conduct of Mainland or its
nurses or other employees was a proximate cause of Glenda [Burkhalter's] death,"
and "his opinions on proximate cause are conclusory."

 In the five-page report, the only specific mention of the hospital occurs when
Dr. Fullerton states that "[n]egligent care was rendered to Glenda Burkhalter and the
standard of care breached--by Dr. Armstrong, the treating physicians (including the
hospitalists), and the hospital staff-during her hospitalization at Mainland Medical
Center." However, the report fails to mention the appropriate standard of care
specifically in regard to Mainland, its nurses, and its staff. The report similarly fails
to identify specifically how Mainland, its nurses, or staff breached that standard of
care. Nor does the report explain any causal relationship between the acts of
Mainland, its nurses and staff, and the injuries of Glenda Burkhalter. Thus, the report
omitted the statutory elements of the Burkhalters' claim against Mainland. See Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(l), (r)(6); Jernigan v. Langley, 195 S.W.3d
91, 94 (Tex. 2006). 

 The Burkhalters argue that because they allege in their petition that Dr.
Armstrong was acting as the hospital's "agent, servant, and/or employee," that "each
statement regarding Dr. Armstrong may implicate Mainland." However, the
Burkhalters cite no authority for the proposition that, by alleging in a petition that a
doctor is acting as an "agent, servant, and/or employee" of a hospital, an expert report
may be adequate under section 74.351 in regard to a hospital. Moreover, Mainland
notes that "Dr. Fullerton did not state that his opinions against Dr. Armstrong would
also apply against the hospital because of the Burkhalters' pleading that Dr.
Armstrong was an agent of the hospital."

 Because Dr. Fullerton's expert report omits at least one of the three specifically
enumerated requirements of section 74.351(r)(6) in regard to Mainland, it cannot
constitute an objective good faith effort to meet the statutory requirements. See
Jernigan, 195 S.W.3d at 94. Accordingly, we hold that the trial court erred in
denying Mainland's December 6, 2005 motion to dismiss the health care liability
claim of the Burkhalters.

Conclusion


 We reverse the trial court's January 25, 2006 order denying Mainland's motion
to dismiss and render judgment dismissing with prejudice the Burkhalters' claims
against Mainland. (7)



 Terry Jennings

 Justice


Panel consists of Justices Nuchia, Jennings, and Higley.
1. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (Vernon Supp. 2006).
2. See id. § 74.351 (Vernon Supp. 2006). Before September 1, 2005, section 74.351(a)
required that a plaintiff, within 120 days of filing a health care liability claim, serve
on each defendant an expert report, along with the expert's curriculum vitae. See Act
of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875,
amended by Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1-3, 2005 Tex. Sess.
Law Serv. 1590, 1591 (Vernon Supp. 2006). Section 74.351(a) has been amended
since the Burkhalters' health care liability claim accrued. See id. (providing that
amendment took effect September 1, 2005). However, which version of the statute
applies does not affect our analysis, and we therefore cite to the current version of the
statute.
3. Dr. Armstrong is not a party to this appeal.
4. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a).
5. See id. § 74.351.
6. See id. § 74.351(c) ("If an expert report has not been served . . . because elements of
the report are found deficient, the court may grant one 30-day extension to the
claimant in order to cure the deficiency.").
7. We note that, in its brief, Mainland did not request an award of reasonable attorney's
fees. See id. § 74.351(b)(1).